GMP:NDB/TAW
F. #2019R00433

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

- against -

OMAR CARBAJAL,
    also known as "Rekk,"

              Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

C O M P L A I N T

(21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(i))

19 M 224

EASTERN DISTRICT OF NEW YORK, SS:

        MICHAEL PARENTEAU, being duly sworn, deposes and states that he is a Special Agent with the Drug Enforcement Administration, duly appointed according to law and acting as such.

        In or about and between February 6, 2019 and March 13, 2019, within the Eastern District of New York and elsewhere, the defendant OMAR CARBAJAL, also known as "Rekk," together with others, did knowingly and intentionally distribute and possess with intent to distribute a controlled substance, which offense involved one kilogram or more of a substance containing heroin, a Schedule I controlled substance.

        (Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)(i))

The source of your deponent's information and the grounds for his belief are as follows:[1]

1. I am a Special Agent with the Drug Enforcement Administration ("DEA") and have been since approximately 2016. Since then, I have participated in the investigation of cases involving racketeering and narcotics distribution, among other crimes. During my tenure with the DEA, I have participated in investigations that have included, among other investigative techniques, the use of physical surveillance, execution of search and arrest warrants, consensual recordings of individuals associated with narcotics trafficking and other criminal activities, and debriefings of confidential sources and cooperating witnesses. Through my training, education and experience, I have become familiar with narcotics trafficking and other criminal activities and the efforts of persons involved in such activity to avoid detection by law enforcement. I am familiar with the facts and circumstances set forth below from my participation in the investigation; my review of the investigative file, including the defendant's criminal history record; and from reports of other law enforcement officers involved in the investigation.

2. Among other duties, I have participated in an investigation of the defendant OMAR CARBAJAL, also known as "Rekk," and his co-conspirators. The investigation has showed that between approximately February 6, 2019 and March 13, 2019, CARBAJAL was involved in the distribution of heroin in Queens, New York.

---

[1] Because the purpose of this complaint is to set forth only those facts necessary to establish probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.

3. On or about October 16, 2018, acting at the direction and under the supervision of law enforcement officers, a confidential source (the "CS")[2] purporting to be an individual seeking to purchase cocaine was introduced to the defendant OMAR CARBAJAL, also known as "Rekk." The CS and CARBAJAL agreed on a price of $45 per gram for the cocaine. CARBAJAL provided his telephone number to the CS for the purpose of conducting drug transactions. All of the telephone calls described below between the CS and CARBAJAL occurred over CARBAJAL's telephone line and were recorded.

4. On or about October 23, 2018, the CS called the defendant OMAR CARBAJAL, also known as "Rekk," and attempted to purchase approximately 28 grams of cocaine from CARBAJAL. The following is an excerpt from the audio recording of the ensuing conversation between the CS and CARBAJAL:[3]

CARBAJAL: Hey, listen I'm sorry um, yo we can't do it like at 6?

CS: I'm already here.

CARBAJAL: Damn son, no it's that I was waiting for this stuff and this guy's not going to see me until 5:30, you know?

CS: Until 5:30?

CARBAJAL: Yeah, he's not going to see me until 5:30.

Based on my training and experience and background in this investigation, I believe that when CARBAJAL said "Damn son, no it's that I was waiting for this stuff and this guy's not

---

[2] The CS is a paid informant for the DEA who has been used in several investigations. S/he has a prior conviction for narcotics trafficking in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(A).

[3] All transcriptions set forth herein are draft transcripts, subject to revision and correction.

going to see me until 5:30, you know," he was telling the CS that he (CARBAJAL) would not have cocaine to sell to the CS before 5:30 p.m. that day. The CS and CARBAJAL then agreed to meet the following day.

   5. On or about October 24, 2018, the CS contacted the defendant OMAR CARBAJAL, also known as "Rekk," over the telephone to arrange a controlled purchase of cocaine. Later that day, and acting at the direction and under the supervision of law enforcement authorities, the CS met with CARBAJAL in Queens, New York, and conducted a controlled purchase of approximately 28 grams of cocaine from CARBAJAL in exchange for $1,300, as they had previously agreed.[4] Law enforcement officers subsequently tested the package of cocaine that the defendant provided to the CS, which tested positive for cocaine.

   6. On or about October 25, 2018, the defendant OMAR CARBAJAL, also known as "Rekk," contacted the CS and the following exchange occurred:

  CARBAJAL: How was that?  Fireee

  CS:   It was good.  Thanks bro.

Based on my training and experience and background in this investigation, I believe that when CARBAJAL asked "How was that? Fireee," he was asking if the quality of the cocaine he had provided the CS the previous day was good.

---

  [4] Before each controlled purchase referenced herein, law enforcement officers met with the CS to discuss the CS's anticipated acquisition of narcotics from the defendant OMAR CARBAJAL, also known as "Rekk." Upon the CS's arrival at each meeting, law enforcement officers searched the CS and his/her vehicle for weapons and contraband, which searches yielded negative results each time.

7. On or about November 6, 2018, the CS contacted the defendant OMAR CARBAJAL, also known as "Rekk," over the telephone to arrange another controlled purchase of cocaine. Later that day, and acting at the direction and under the supervision of law enforcement authorities, the CS met with CARBAJAL in Queens, New York, and conducted a controlled purchase of approximately 28 grams of cocaine from CARBAJAL in exchange for $1,250. Law enforcement officers subsequently tested the package of cocaine that the defendant provided to the CS, which tested positive for cocaine.

8. On or about December 5, 2018, the CS contacted the defendant OMAR CARBAJAL, also known as "Rekk," over the telephone to arrange another controlled purchase of cocaine. Later that day, and acting at the direction and under the supervision of law enforcement authorities, the CS met with CARBAJAL in Queens, New York, and conducted a controlled purchase of approximately 56 grams of cocaine in exchange for $2,500. Law enforcement officers subsequently tested the package of cocaine that the defendant provided to the CS, which tested positive for cocaine.

9. On or about February 5, 2019, the CS contacted the defendant OMAR CARBAJAL, also known as "Rekk," over the telephone to arrange another controlled purchase of cocaine. Later that day, and acting at the direction and under the supervision of law enforcement authorities, the CS met with CARBAJAL in Queens, New York, and conducted a controlled purchase of approximately 56 grams of cocaine in exchange for $2,500. When they met, CARBAJAL told the CS that he (CARBAJAL) only had 28 grams of cocaine with him that day, and that he could provide the CS with another 28 grams of cocaine the following day. Accordingly, the CS provided CARBAJAL with $1,250 in exchange for 28 grams of cocaine. The CS also asked CARBAJAL if he knew anyone who

sold "dog food," understood to refer to heroin. In response, CARBAJAL stated that he had two different types of heroin available for sale, one that he referred to as "9.3 quality," which he sold for $66 per gram, and another that he referred to as "fire," which he sold for $50 per gram. Law enforcement officers subsequently tested the package of cocaine that the defendant provided to the CS, which tested positive for cocaine.

10. On or about February 6, 2019, the CS contacted the defendant OMAR CARBAJAL, also known as "Rekk," over the telephone to arrange another controlled purchase of cocaine. Later that day, and acting at the direction and under the supervision of law enforcement authorities, the CS met with CARBAJAL in Queens, New York, and conducted a controlled purchase of approximately 28 grams of cocaine in exchange for $1,250. During that meeting, CARBAJAL also provided the CS a free sample of heroin, which CARBAJAL stated was the type that he sold for $50 per gram. CARBAJAL stated that he was waiting to get a sample of the other type of heroin to provide to the CS. Law enforcement officers subsequently tested the package of cocaine that the defendant provided to the CS, which tested positive for cocaine. Law enforcement officers subsequently tested the package of heroin that the defendant provided to the CS, which tested positive for heroin.

11. On or about February 11, 2019, the CS contacted the defendant OMAR CARBAJAL, also known as "Rekk," over the telephone to arrange another controlled purchase of heroin. Later that day, and acting at the direction and under the supervision of law enforcement authorities, the CS met with CARBAJAL in Queens, New York, and conducted a controlled purchase of approximately 73 grams of heroin in exchange for $3,500. During that meeting, CARBAJAL also provided the CS a free sample of a different type of heroin, as they had previously discussed. During this meeting, the CS told

CARBAJAL, in sum and substance and in part, that he/she wanted to purchase a firearm that he/she could carry when delivering narcotics and collecting money from customers. CARBAJAL told the CS that he could get a .44 caliber firearm to sell the CS. Law enforcement officers subsequently tested the package of heroin and the sample of heroin that the defendant provided to the CS, both of which tested positive for heroin.

12. On or about February 24, 2019, the defendant OMAR CARBAJAL, also known as "Rekk," contacted the CS over the telephone and stated, in sum and substance and in part, that he (CARBAJAL) could acquire two firearms for the CS: a new .44 caliber semiautomatic pistol, which he would sell the CS in exchange for $1,200, and a used firearm that he would sell the CS for an unspecified amount.

13. On or about March 4, 2019, the defendant OMAR CARBAJAL, also known as "Rekk," contacted the CS over the telephone and stated that, in sum and substance and in part, he (CARBAJAL) would meet with his gun supplier and report to the CS afterwards.

14. On or about March 5, 2019, the defendant OMAR CARBAJAL, also known as "Rekk," contacted the CS over the telephone and stated, in sum and substance and in part, that his gun supplier had not acquired firearms from South Carolina due to a transport problem. CARBAJAL further stated, in sum and substance and in part, that he would provide the CS with one of his (CARBAJAL's) firearms on March 6, 2019, and that his brother would have to get the firearm out of their storage locker.

15. On or about March 6, 2019, acting at the direction and under the supervision of law enforcement authorities, the CS met with the defendant OMAR CARBAJAL, also known as "Rekk," in Queens, New York. During that meeting,

CARBAJAL provided a semiautomatic firearm to the CS in exchange for $800. CARABAL also agreed to sell the CS a kilogram of heroin for $66,000 at a future date.

16.   On or about March 13, 2019, acting at the direction and under the supervision of law enforcement authorities, the CS met with CARBAJAL in Queens, New York, to conduct a controlled purchase of one kilogram of heroin. During that meeting, CARBAJAL provided the CS with a package, which CARBAJAL indicated contained one kilogram of heroin. CARBAJAL was then placed under arrest. Law enforcement officers subsequently tested the package of heroin that the defendant provided to the CS, which tested positive for heroin.

17.   Law enforcement officers read the defendant OMAR CARBAJAL, also known as "Rekk," his <u>Miranda</u> rights, and CARBAJAL agreed to waive them and speak to agents without an attorney present. CARBAJAL stated, in sum and substance in part, that he was engaged in drug trafficking and intended to sell drugs for approximately six months in order to make money.

WHEREFORE, your deponent respectfully requests that the defendant OMAR CARBAJAL, also known as "Rekk," be dealt with according to law.

_____
MICHAEL PARENTEAU
Special Agent
Drug Enforcement Administration

Sworn to before me this
14th day of March, 2019

_____
THE HONORABLE RAMON E. REYES, JR.
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK